UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY LEONARD, et al.,

    Plaintiffs,                                              Civil Action No. 21-CV-10146

vs.                                                        HON. BERNARD A. FRIEDMAN

NOKEL LLC, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is presently before the Court on defendants' motion to dismiss plaintiffs' first amended complaint ("FAC") (ECF No. 27). Plaintiffs have responded and defendants have replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall grant the motion.

This is a housing discrimination case. Plaintiffs allege that they rent, or have rented, houses owned by defendants in Detroit's Islandview neighborhood.[1] Defendants allegedly have discriminated against black tenants by not making requested repairs, and against black prospective tenants by not renting to them, in an effort "to change the racial demographics of the neighborhood by displacing black tenants." FAC ¶ 32. Plaintiffs, who are not black (Leonard and Messer are white, and Misumi is Asian, *see* FAC ¶¶ 1-3), also allege that defendants have retaliated against them, and against some of defendants' other tenants, for protesting against defendants'

---

[1] Plaintiffs allege that Islandview is "an area bounded on the north by Mack Avenue, the east by Van Dyke Street, the south by East Jefferson Avenue, and the west by Meldrum Street." FAC ¶ 26. Census data indicate that Islandview, one of Detroit's 92 neighborhoods, had 5,700 residents and 2,665 households in 2018. *See* https://statisticalatlas.com/neighborhood/Michigan/Detroit/Islandview/Population (last visited July 11, 2021).

discriminatory practices by declining to renew their leases "unless they signed an agreement that would prohibit them from organizing to vindicate their rights under the Fair Housing Act or support others in exercising their rights under the Fair Housing Act." *Id.* ¶ 99.

In Counts I, II, and III, plaintiffs assert claims under the Fair Housing Act ("FHA") for intentional discrimination, disparate impact, and retaliation. In Counts IV through XV, plaintiffs assert twelve state-law claims under the Elliott-Larsen Civil Rights Act ("ELCRA), for "illegal contract," breach of contract, "breach of the statutory housing covenants," various violations of the Michigan Consumer Protection Act, and "unlawful retention of security deposit." Plaintiffs seek damages and declaratory and injunctive relief.

Defendants argue that the FAC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Supreme Court, citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to

> accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Although a plaintiff need not establish a prima facie case of discrimination to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002), he must plead 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937." *Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 519 (6th Cir. 2015).

In support of their FHA claims for intentional discrimination and disparate impact, plaintiffs make the following allegations: (1) in May 2020, all thirteen of defendants' Islandview houses were rented by non-black tenants, while the Islandview neighborhood is 81% black, *see* FAC ¶¶ 17, 29; (2) sometime in 2019, defendants purchased a house on Beals Street and "either evicted or in some other way removed the black family" who had been living there, FAC ¶ 34; (3) at the Jefferson Apartments, a 24-unit apartment building owned by defendants in a neighborhood near Islandview,[2] defendants do not make repairs for the four tenants (three of whom are black) who

---

[2] Defendants indicate that this building, located at 8643 E. Jefferson Avenue, is actually called the Chalfonte and that it has twenty units, not twenty-four. *See* Defs.' Mot. to Dismiss, Br. at 16 n.9. The Court notes that this building is located approximately 0.4 miles from the eastern boundary of Islandview in the nearby neighborhood of Indian Village. Indian Village

began leasing before defendants bought the building, *see* FAC ¶¶ 35, 38-39, 41; (4) of the twenty units defendants have renovated, two are rented by black tenants, *see* FAC ¶¶ 42; (5) sometime after July 2018, "three black women . . . applied to rent 2433 Townsend Street [one of defendants' Islandview house] and were denied" although they "were qualified to rent," and in October 2018 defendants rented this house to plaintiffs Leonard and Misumi, FAC ¶¶ 55-56, 61; (6) in November 2019, defendants rented one of their Islandview houses, 2509 Beals, to white tenants, after previously showing the house "to approximately five black prospective tenants," at least one of whom "applied, was qualified, and was denied rental," FAC ¶¶ 64-66; (7) black tenants, including a woman named McCant, rented one of defendants' Islandview houses (2432 Townsend) that needed repairs ("a lack of heat, pipes in the bathroom freezing repeatedly, mice, a broken window, and an upstairs bathroom leaking into the downstairs living room"); defendants did not make these repairs, the tenants moved out after withholding rent for two months, defendants obtained a judgment for unpaid rent, and then defendants rented the house to white tenants, FAC ¶¶ 18, 68-77; (8) "[m]ultiple non-black tenants, including Geoffrey Leonard, Laura Misumi, and Sarah Messer, have requested repairs and they have been made, and no non-black tenant's house has been rendered fully uninhabitable because of Defendants' failure to make repairs," FAC ¶ 78; and (9) "[m]ultiple white tenants of Defendants, including the white tenants of 2420 Beals Street and the white tenants of 2426 Townsend Street, have moved out after lawfully withholding rent," and defendants "have not filed any legal action against any white tenants who have withheld rent to attempt to recover the unpaid rent," FAC ¶¶ 79-80.

---

and Islandview are separated by West Village.

*Count I: Intentional Discrimination (Disparate Treatment) Under the FHA*

Defendants first seek dismissal of Count I, which asserts a claim for intentional race discrimination under the FHA, 42 U.S.C. § 3604.[3] The gist of this claim is that defendants, by discriminating against their black tenants, and against black prospective tenants, have "unlawfully deprived Plaintiffs [of] the social and professional benefits of living in a racially integrated society." FAC ¶ 127. As noted, there is no allegation that defendants have racially discriminated against plaintiffs.

The FHA prohibits discrimination in the sale or rental of housing or in the provision of housing services based on race, among other characteristics. Any "aggrieved person" may file suit "to obtain appropriate relief with respect to such discriminatory housing practice or breach." Section 3613(a)(1)(A). An aggrieved person is defined as "any person who–(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a

---

[3] Section 3604 states:

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

discriminatory housing practice that is about to occur." Section 3602(i). Therefore, the plaintiffs in such a case need not themselves have been discriminated against. As the Sixth Circuit has noted,

> [i]n *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), a black tenant and a white tenant of an apartment complex brought suit under the Fair Housing Act, alleging that their landlord racially discriminated against nonwhites. *Id*. at 206-07, 93 S.Ct. 364. The Court held that both tenants had standing because "the alleged injury to existing tenants by exclusion of minority persons from the apartment complex is the loss of important benefits from interracial associations." *Id*. at 209-10, 93 S.Ct. 364. "The person on the landlord's blacklist is not the only victim of discriminatory housing practices; it is ... the whole community." *Id*. at 211, 93 S.Ct. 364 (internal quotation marks omitted).

*Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 231 (6th Cir. 2003). Under the FHA, "standing depends on whether one is a member of the community in which allegedly unlawful discrimination is taking place." *Id.* at 232.

While plaintiffs, who are not black, therefore have standing to assert a claim that defendants have violated the FHA by discriminating against black tenants and prospective tenants, plaintiff have failed to allege plausibly that defendants have engaged in intentional race discrimination. The Sixth Circuit has indicated that disparate treatment (intentional discrimination) claims under the FHA are analyzed in the same way as intentional discrimination claims under Title VII of the Civil Rights Act of 1964. *See Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 537 (6th Cir. 2014). Under both statutes, plaintiffs' initial burden is to show, by either direct or circumstantial evidence, that defendants unlawfully discriminated. In the absence of direct evidence, plaintiffs must allege facts that give rise to a reasonable inference of discrimination. *See Lindsay v. Yates*, 578 F.3d 407, 415-18 (6th Cir. 2009).

In the present case, the complaint makes no allegations suggesting that plaintiffs have

direct evidence of discrimination. Plaintiffs allege that defendants have said they intend to "remake the neighborhood" and that the neighborhood is "in transition." FAC ¶¶ 31, 33. Plaintiffs' allegation that these "comments reflected a desire by [defendants] to change the racial demographics of the neighborhood by displacing black tenants," FAC ¶ 32, is an unreasonable and implausible leap. These comments are not direct evidence of intentional race discrimination.

Nor have plaintiffs plausibly alleged, by pointing to circumstantial evidence, that defendants have engaged in intentional race discrimination. Plaintiffs indicate that this claim is based on their allegations that defendants have "refus[ed] to rent to multiple black prospective tenants, refus[ed] to make repairs for a black family of tenants, and evict[ed] the black family of tenants." FAC ¶ 127. In their response to the instant motion, plaintiffs focus on defendants' alleged mistreatment of McCant, "the denial of prospective Black tenants at 2509 Beals Street and 2433 Townsend Street," and the fact that "defendants' tenants are significantly whiter than the community at large." Pls.' Resp. Br. at 4-11. Plaintiff also point again to defendants' alleged comments about "remaking the neighborhood." *Id.* at 11.

Plaintiffs' allegations regarding McCant do not support a plausible inference that defendants discriminated against her because of her race. First, defendants' decision to sue McCant for unpaid rent falls outside the purview of the statute. The FHA prohibits a landlord from discriminating "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race." 42 U.S.C. § 3604(b). Even if, as plaintiffs allege, defendants sued McCant but not white tenants who withheld rent and moved out before their leases expired, this alleged unequal treatment, occurring post-tenancy, has nothing to do with the "terms, conditions, or privileges" of the rental or with "the

7

provision of services or facilities in connection therewith."

Second, plaintiffs do not plausibly allege that defendants neglected to make repairs requested by McCant because of her race. Plaintiffs allege only that defendants failed to make repairs to the house McCant rented, that she withheld rent in an effort to force them to make repairs, and that she moved out when the repairs were not made. Plaintiffs argue that defendants responded more favorably when white tenants requested repairs, but their allegation concerning this subject is somewhat different: "Multiple non-black tenants . . . have requested repairs and they have been made, and no non-black tenant's house has been rendered fully uninhabitable because of Defendants' failure to make repairs." FAC ¶ 78. The comparison fails because plaintiffs do not allege that defendants rendered McCant's house "fully uninhabitable," but simply that McCant and her family moved out "when the repairs were still not made." FAC ¶ 75. Plaintiffs do not allege that McCant moved out *because* the repairs were not made, that she was compelled to move out for this reason, or that none of defendants' white tenants had a similar experience. Nor do plaintiffs offer any details regarding the types of repairs they requested and compare them with those requested by McCant, or offer any other facts from which one could reasonably infer that defendants treated McCant less favorably than non-black tenants because of her race. The allegations regarding McCant are at most "merely consistent with" defendants' liability and "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs allegations concerning defendants' discrimination against black prospective tenants are similarly implausible and lacking in substance. Plaintiffs contend that they have "pled sufficiently particular facts to state a plausible claim of disparate treatment under § 3604(a) based

8

on the denial of prospective Black tenants at 2509 Beals Street and 2433 Townsend Street." Pls.' Resp. Br. at 8. The Court disagrees. Regarding 2509 Beals, the allegations are:

> 64. On or about November 18, 2019, Defendants leased their property at 2509 Beals Street to Daniel Cox and Allissa Bailey-Cox, who are white.
>
> 65. Prior to showing or leasing 2509 Beals Street to Daniel Cox and Allissa Bailey-Cox, Defendants showed the property to approximately five black prospective tenants.
>
> 66. At least one of these black prospective tenants applied, was qualified, and was denied rental of 2509 Beals Street.
>
> 67. Upon information and belief, Defendants did not lease 2509 Beals Street to these prospective black tenants because of their race.

FAC ¶¶ 64-67. The allegations regarding 2433 Townsend are:

> 51. In July of 2018, [defendant] Reimer Priester gave a tour of two properties, 2433 Townsend Street and 2426 Townsend Street to Nicholas Hayes and Naomi Burton, who are white, and three black women.
>
> 52. Nicholas Hayes and Naomi Burton expressed interest in renting 2426 Townsend Street. The three black women expressed interest in renting 2433 Townsend Street. Both houses were still in the process of undergoing interior renovation at the time of the tour.
>
> \* \* \*
>
> 55. The three black women who toured with Hayes and Burton applied to rent 2433 Townsend Street and were denied.
>
> 56. The three black women who toured with Hayes and Burton were qualified to rent 2433 Townsend Street
>
> 57. Upon information and belief, the three black women were denied because of their race.
>
> \* \* \*
>
> 59. On or about October 5, 2018, Alex DeCamp showed Geoffrey

9

>Leonard and Laura Misumi the house at 2433 Townsend Street.
>
>60. Alex DeCamp said the house would be ready for move-in on November 1, 2018.
>
>61. On October 17, 2018, Geoffrey Leonard and Laura Misumi signed an eighteen-month lease, from November 2018 through April 2019 [for 2433 Townsend].

FAC ¶¶ 51-52, 55-57, 59-61.

As to both properties, plaintiffs' allegation that defendants denied the rental applications of the black prospective tenants because of their race is insufficiently supported with relevant facts. While plaintiffs allege that the black prospective tenants "were qualified,"[4] they makes no allegations regarding the relative qualifications of the successful and rejected applicants. A landlord may legitimately consider a variety of factors in choosing among applicants, including their credit score, credit report, past bankruptcies, past judgments, amount of income, employment history, employment stability, criminal history, and eviction history. Therefore, the mere fact that white and black prospective tenants applied to rent 2509 Beals and 2433 Townsend and that defendants chose the white applicants is indicative of nothing, as plaintiffs offer no information regarding the black applicants other than to assert, with no factual basis, that they were "qualified," and no information at all regarding the qualifications of the successful white applicants. As with plaintiffs' allegations regarding McCant, their allegations regarding defendants' selection of renters for these two properties are, at most, "merely consistent with" defendants' liability and "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678

---

[4] Plaintiffs do not clearly state how many of the five black prospective tenants who toured 2509 Beals were qualified. Rather, they allege vaguely that "[a]t least one of these black prospective tenants applied [and] was qualified." FAC ¶ 66.

(quoting *Twombly*, 550 U.S. at 557).

The same must be said of plaintiffs' allegation that defendants have rented all thirteen of their houses to non-black tenants, while 81% of Islandview's population is black. *See* FAC ¶¶ 17, 29. Such statistics can, as plaintiffs note, "provide circumstantial evidence to support or refute a report of disparate treatment," *Fair Hous. Ctr. of Sw. Mich. v. Hunt*, No. 1:09-CV-593, 2011 WL 710666, at *3 (W.D. Mich. Feb. 23, 2011), but such evidence "must be cast against a proper background . . . to constitute valid evidence of discrimination." *Felder v. Nortel Networks Corp.*, 187 F. App'x 586, 595 (6th Cir. 2006). In the present case, it is the racial composition of those who applied to rent defendants houses, and who were qualified, that would be relevant, and plaintiffs do not offer this statistic. The mere fact that 100% of defendants' tenants (thirteen of thirteen) are non-black, while 29% of Islandview's residents are non-black, does not give rise to a plausible inference of race discrimination, as plaintiffs provide no statistical information regarding the relevant point of comparison, i.e., the applicant pool.

Finally, the Court rejects plaintiffs' argument that defendants' comments regarding remaking the neighborhood, and the neighborhood being in transition, are circumstantial evidence of race discrimination. As noted above, these comments are at most ambiguous and cannot plausibly be interpreted to suggest defendants have racially discriminated in their selection or treatment of tenants.

The Court concludes that the complaint fails to state a claim for intentional race discrimination under the FHA. Therefore, the Court shall grant defendants' motion to dismiss as to Count I.

*Count II: Disparate Impact Under the FHA*

Defendants next seek dismissal of plaintiffs' disparate impact claim, which is based on the following allegations:

> 134. Based on information and belief, Defendants engaged in a policy or practice of providing repair and maintenance services only to new tenants, resulting in a disproportionate number of non-black tenants receiving services and black tenants not receiving services.
>
> 135. This manifested itself in Defendants performing little maintenance of the apartments of tenants in the Jefferson Apartments who were already residing in properties when Defendants acquired them in order to encourage them to move out.
>
> 136. Based on information and belief, Defendants engaged in a policy or practice of providing unequal services to disproportionately black tenants who were already residing in properties when Defendants acquired them in order to encourage them to move out.
>
> 137. Defendants' policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective.
>
> 138. Defendants' policy or practice has a disproportionately adverse effect on tenants and/or potential tenants who are black, and in doing so unlawfully deprived Plaintiffs the social and professional benefits of living in an integrated society.

FAC ¶¶ 134-38. The FAC also alleges that defendants "have maintained a policy of not making repairs to these units, and discouraging tenants in these units from requesting repairs. This has harmed the tenants who are living in that apartment by causing them to live in substandard conditions." *Id.* ¶ 41. In their response to the instant motion, plaintiffs reiterate that this claim is based on defendants' alleged policy to not repair the four "Jefferson Apartments" units (three of which, i.e., 75%, are occupied by black tenants) that have been occupied since before defendants' purchase of the building. *See* Pls.' Resp. Br. at 12 ("Defendants did not make repairs to apartments that were already occupied by tenants when Defendants purchased the building, while making

12

repairs to apartments that have been renovated and re-rented.").

"[T]o show disparate impact, a plaintiff must demonstrate that a facially neutral policy or practice has the effect of discriminating against a protected class of which the plaintiff is a member." *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007). To state a prima facie case of such discrimination, plaintiffs must "(1) identify and challenge a specific housing practice, and then (2) show that the practice had an adverse effect on members of a protected class by offering statistical evidence of a kind or degree sufficient to show that the practice in question has caused the adverse effect in question." *Id.* at 377.

Assuming plaintiffs have standing to assert this claim,[5] it is not alleged with sufficient supporting facts to withstand defendants' motion. First, plaintiffs contradict themselves by alleging both that defendants provide repair and maintenance services "only to new tenants," FAC ¶ 134 (i.e., none to long-term tenants), and that defendants have performed "little maintenance" to the apartments occupied by long-term tenants. Second, whether the alleged policy is to provide no maintenance and repairs for long-term tenants, or "little" maintenance and repairs for these tenants, the allegation is implausible in the absence of any shred of factual support. Plaintiffs do not identify the residents in question or the maintenance or repairs that are needed, and plaintiffs do not indicate

---

[5] As noted above, standing in FHA cases depends on plaintiff being "a member of the community in which allegedly unlawful discrimination is taking place." *Hamad*, 328 F.3d at 232. Plaintiffs allege that they rent, or rented, houses owned by defendants in Islandview. The Jefferson (Chalfonte) Apartments are not located in Islandview, but in a different Detroit neighborhood, Indian Village, that is at least 0.4 miles east of Islandview. *See supra* n.2. The parties have not briefed whether plaintiffs' "community" encompasses neighborhoods beyond their own. While at some point the distance between plaintiffs and the location of the alleged discrimination will be too great to support plaintiffs' standing, for present purposes the Court assumes that plaintiffs have standing to object to defendants' alleged repair and renovation policies at the Chalfonte Apartments.

whether the tenants ever requested any such maintenance or repairs. These are classic, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678, which simply "do not suffice" to state a claim. *Twombly*, 550 U.S. at 555. The allegation also defies the Court's "judicial experience and common sense," *Ashcroft*, 556 U.S. 662, because it is not in a landlord's own financial interest to allow apartments it owns to deteriorate.

The Court concludes that plaintiffs have failed to state a disparate impact claim under the FHA. Therefore, the Court shall grant defendants' motion as to Count II.

### Count III: Retaliation Under the FHA

Defendants next seek dismissal of Count III, in which plaintiffs allege that defendants retaliated against them, and against other tenants, for protesting against defendants' perceived racially discriminatory practices.

> 91. On May 28, 2020, the tenants, including [plaintiffs], attended a community meeting with Detroit City Council Member Mary Sheffield and raised, among other things, their belief that Defendants were engaged in racial discrimination.
>
> 92. On June 9, 2020, tenants attended a protest organized by local community organizations resisting gentrification that including a demonstration at [defendant] Alex DeCamp's home. Tenants carried signs that said, among other things, "stop displacing black families."
>
> 93. On June 11, 2020, tenants, including [plaintiffs], met with Michigan State Senator Stephanie Chang. They asked her if she would reach out to [defendants] Alex DeCamp and Reimer Priester to facilitate a meeting about discussing the tenants' concerns that they were, among other things, discriminating in who they rented to by reducing their number of black tenants, declining to rent to prospective black tenants, and failing to make repairs for a black tenant, resulting in that tenant moving out.
>
> 94. Stephanie Chang reached out to Defendants on behalf of the tenants and requested that they meet with the tenants to discuss the tenants' concerns.

95. On June 25, 2020, the tenants, including Geoffrey Leonard and Laura Misumi, attended a town hall held by the Detroit Housing and Revitalization Department on development projects in Islandview, including projects by Defendants.

96. The tenants, including Geoffrey Leonard, informed the representatives from the city about, among other things, the tenants' belief that Defendants were discriminating in who they rented to on the basis of race and that the city should not support their projects until they addressed these issues.

97. On July 28, 2020, the tenants submitted a letter to City Council regarding a development that Defendants are affiliated with, in which the tenants stated that [defendant] VPM creates "a housing shortage driven by a few non-local, white investors buying up large swaths of a historically black neighborhood" and engaging in "displacement of longtime residents."

98. Defendants had knowledge, both actual and constructive, of the tenants' efforts, including efforts by Geoffrey Leonard and Laura Misumi, to help the tenants and prospective tenants of Defendants to exercise their right to live in integrated housing free of racial discrimination.

99. Since organizing began, Defendants have decided not to renew multiple tenants' leases, including Plaintiffs' leases, unless they signed an agreement that would prohibit them from organizing to vindicate their rights under the Fair Housing Act or support others in exercising their rights under the Fair Housing Act.

100. Landlord Defendants have used similar threats to require other tenants to stop attempting to vindicate their rights under the Fair Housing Act, specifically conditioning lease renewals on tenants agreeing to stop publicly advocating that defendants stop engaging housing discrimination.

101. Defendants have renewed the leases of four tenants who have signed agreements that prevent them from continuing to engage in advocacy against Defendants' discriminatory housing practices.

102. Prior to organizing, Defendants had regularly renewed the tenants' leases, including Plaintiffs.

103. The purpose of Defendants' position was to end Plaintiffs' and

> the other tenants' organizing efforts against racial discrimination by Defendants and to end Plaintiffs' and the other tenants' attempt to vindicate their rights to live in racially integrated housing.

FAC ¶¶ 91-103. Defendants argue that these allegations fail to state a retaliation claim under the FHA because they do not sufficiently allege that they acted with discriminatory animus.

Under 42 U.S.C. § 3617, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." In the Sixth Circuit,

> a plaintiff is required to demonstrate "discriminatory animus" to prevail on an interference claim under the Act. *See Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994) (finding that section 3617 covers actors "who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus"). [Plaintiffs'] vague and conclusory allegations that Ann Arbor acted with "a discriminatory intent, purpose, and motivation" to prevent handicapped people from living on the property do not transform [plaintiffs'] otherwise insufficient factual pleadings into allegations that plausibly support an inference of discriminatory animus. Indeed, such allegations are "[c]onclusory allegations or legal conclusions masquerading as factual allegations," *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) (alteration in the original) (citation and internal quotation marks omitted), and we conclude that the district court did not err in finding [plaintiffs'] complaint insufficient.
>
> We recognize that "the prima facie case operates as a flexible evidentiary standard, [and] it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Nevertheless, broad and conclusory allegations of discrimination cannot be the basis of a complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims. Indeed, our Circuit has made clear that

16

> "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations and internal quotation marks omitted), and that a recitation of the elements of the cause of action is insufficient to state a claim for relief. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted). This standard does not require "detailed factual allegations," *Hensley Mfg.*, 579 F.3d at 609 (citation omitted), but "a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation omitted).

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613-14 (6th Cir. 2012).

In the present case, the retaliation claim fails because plaintiffs do not allege that defendants acted with racially discriminatory animus either with regard to the alleged non-renewal of plaintiffs' leases or with regard to the underlying FHA violations, which are not sufficiently pled for the reasons stated above. Moreover, the agreement that some tenants were required to sign as a condition of renewing their leases contains nothing indicating the required discriminatory animus.[6] Defendants have attached two such agreements to their motion as Exhibit 14. The tenants who signed these agreements owed defendants between $6,000 and $10,850 in unpaid rent. In both cases, the leases were renewed for another year, with no increase in monthly rent, in exchange for the tenants' promise to pay the unpaid rent and to not withhold rent in the future. In addition, the agreements contain mutual non-disparagement clauses, a common provision in civil settlements. There is nothing in these agreements to suggest that defendants had any motivation other than to collect thousands of dollars in unpaid rent and to ensure that the tenants would remain current with

---

[6] These agreements are referenced in the FAC and are central to plaintiffs' retaliation claim. The Court may therefore consider them in deciding the instant motion. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003).

their monthly rental payments in the future. In their response to this motion, plaintiffs do not deny that defendants offered to renew their leases on the same terms.

The Court concludes that plaintiffs have failed to state a retaliation claim under the FHA. Therefore, the Court shall grant defendants' motion as to Count III.

***State Law Claims***

As noted above, all of plaintiffs' remaining claims (violation of the ELCRA, "illegal contract," breach of contract, "breach of the statutory housing covenants," various violations of the Michigan Consumer Protection Act, and "unlawful retention of security deposit") are brought under state law. When, as in the present case, the Court disposes of the federal claims and it has only supplemental jurisdiction over the state-law claims, the Court should dismiss the state-law claims without prejudice. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008). *See also* 28 U.S.C. § 1367(c)(3) (permitting the Court to decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction"). Accordingly,

IT IS ORDERED that defendants' motion to dismiss (ECF No. 27) is granted. Counts I, II, and III are dismissed with prejudice; Counts IV through XV are dismissed without prejudice.

IT IS FURTHER ORDERED that defendants' motion (ECF. No. 30) for leave to file under seal Exhibit 14 to their motion to dismiss is granted, as the settlement agreements contained therein are confidential.

Dated: July 19, 2021
Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 19, 2021.

Geoffrey Leonard
2643 Holmes Street
Apartment 1
Hamtramck, MI 48212
geoffreylnrd@gmail.com

s/Johnetta M. Curry-Williams
Case Manager